**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**SHANSHAN ZHAN**                                                            **PLAINTIFF**

**V.**                                                   **CAUSE NO. 3:14-CV-777-CWR-FKB**

**UNIVERSITY OF MISSISSIPPI MEDICAL CENTER**          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant University of Mississippi Medical Center's Motion for Summary Judgment. Docket No. 64. The plaintiff responded, Docket No. 66, and the defendant replied, Docket No. 70. In addition, the plaintiff filed a surrebuttal, to which the defendant has moved to strike. Docket Nos. 71 and 72. Plaintiff then filed a motion to submit additional evidence. Docket No. 76. After reviewing the briefing and applicable law, the Court is ready to rule.

**I. Factual and Procedural Background**

Plaintiff Shanshan Zhan ("Zhan") was employed as a Scientist I with the University of Mississippi Medical Center ("UMMC") from February 6, 2012 until September 9, 2013. Zhan worked under the immediate supervision of Dr. Sean Didion ("Didion").

Zhan is a female of Asian descent. She received her doctorate degree in Neuropathology from Heidelberg University. She also received graduate degrees, including a masters and a doctorate, from institutions in Beijing. Docket No. 64-3. Zhan has previous experience as a postdoc fellow with UC Davis Medical Center and Georgia Health Sciences. She also served as a postdoc lab manager with Georgia Health Sciences.

It was at Georgia Health Sciences where Zhan met Didion. When Didion became employed with UMMC, he offered Zhan a job in his lab. Zhan resigned from her position in Georgia and moved to Mississippi to work with Didion. She would later regret that move.

Zhan claims that something about her professional relationship changed in Mississippi. During her employment, Didion declined Zhan's invitation to list him as co-author on her abstracts and he refused to pay conference registration fees for her presentations. Docket No. 66-16. She also alleges that her colleagues made Asian racial slurs. In particular, Zhan contends they said, "Chinese steal" and "Asia[n] women married white people in order to get rid of their Asian genes." Docket No. 1. Zhan testified that she reported her co-workers' racists comments to Didion and Kevin Wilbert ("Wilbert"), the department administrator, but they failed to act on her complaints. Docket No. 64-5. She also testified that Didion responded that he thought she was trouble. *Id.* UMMC presented no evidence to refute Zhan's testimony.[1]

On July 15, 2013, Didion submitted a proposal to Human Resources to restructure his laboratory. He wanted to eliminate the Scientist I position and hire a laboratory manager. Docket No. 64-6. Zhan, the only Scientist I in Didion's lab, was the sole employee affected by the "reorganization." On August 8, Didion resubmitted the proposal as one for a reduction in force.[2] UMMC's employee relations director Barbara Smith-Watson ("Smith-Watson")

---

[1] UMMC cites to the deposition testimony of Jessica Faulkner as evidence that Zhan's testimony is refuted. *See* Docket No. 70. But, Faulkner testified that she *did not remember* some of the events including the slurs as alleged by Zhan. *See* Docket No., 70-3, at 4-6. Because this matter is before the court on defendant's motion for summary judgment, even if UMMC had submitted evidence which refuted Zhan's testimony, this Court is bound to view the evidence in the light most favorable to the plaintiff. *Abarca v. Metro Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). "The tasks of weighing the evidence and of evaluating the credibility of witnesses belong to the jury." *Lee v. National R.R. Passenger Corp. (Amtrak)*, No. 3:10-CV-0392-CWR-LRA, 2011 WL 6781013, at *3, n. 31 (S.D. Miss. Dec. 27, 2011) (citations omitted). UMMC also argues that Zhan's evidence concerning her co-worker's racial slurs is inadmissible hearsay. Zhan's deposition testimony, *see* Docket No. 64-5, that she *reported* the racial slurs to her superiors, however, is not hearsay.

[2] UMMC interchangeably refers to the proposal as a reorganization and a reduction in force (RIF). The initial proposal submitted by Didion was titled "RE: Didion Laboratory Restructuring," but the revised version was titled "Revised Reduction in Force (RIF) Proposal." Docket Nos. 64-6 and 64-2. UMMC policy defines a RIF as "necessary due to a lack of work, reduction in budget, or whenever it is advisable and in the interest of economy to

approved the proposal on the same day. Docket Nos. 64-1 and 64-2. Also on the same day, Zhan contends that Didion and Wilbert ordered Zhan's co-workers, with the exception of those of Asian descent, to write disparaging letters concerning Zhan's professionalism and lack of teamwork. Docket No. 64-5.

The next day, Didion, Wilbert, and a human resources representative met with Zhan to notify her that her position had been eliminated and her employment terminated effective September 9. Docket No. 64-7.

On August 19, 2013, Zhan filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Docket No. 38-1. The EEOC issued its Right to Sue letter on July 16, 2014. Docket No. 1-1. On October 6, 2014, proceeding *pro se*, Zhan filed this suit alleging Title VII and Equal Pay Act violations. Zhan claimed race and national origin discrimination, retaliation, sexual harassment, and wrongful termination under 42 U.S.C. § 2000e *et seq.*, as well as wrongful termination under state law. Docket No. 1.

On October 28, 2015, the Court granted summary judgment in favor of UMMC on Zhan's national origin, retaliation, sexual harassment, and state law claims. Docket No. 49.[3] Two claims remain: 1) Zhan's Equal Pay Act and Title VII equal pay claims; and 2) her Title VII race discrimination claim.

## II. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

reduce the number of regular and temporary faculty/staff." Docket No. 64-8. The policy does not address "restructuring."

[3] The Court concluded that Zhan had not exhausted her administrative remedies with respect to her federal claims – national origin, retaliation and sexual harassment; that in her charge of discrimination filed with the EEOC she "specifically stated that she believed she was subjected to racial discrimination." Docket No. 49, at 4. Similarly, with respect to her wrongful termination state law claim, Zhan also had not exhausted her administrative remedies either as she did not file a notice of claim with UMMC's chief executive officer. *Id*. at 5

R. Civ. P. 56(a).  A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute.  *Id.* at 56(c)(1).  "Once a summary judgment motion is made and properly supported, the non-movant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citation omitted).  The Court will view the evidence and draw reasonable inferences in the light most favorable to the non-movant.  *Maddox v. Townsend & Sons, Inc.,* 639 F.3d 214, 216 (5th Cir. 2011).

Conclusory allegations and unsubstantiated assertions are not sufficient summary judgment evidence.  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).  In the absence of proof, the court will not assume that the nonmoving party could or would prove the necessary facts.  *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), as *revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).  Entry of summary judgment is warranted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III. Discussion**

    **A.  Equal Pay Claim**

Zhan raises equal pay claims under both Title VII and the Equal Pay Act.  To establish a prima facie case of wage discrimination under Title VII, "a plaintiff must show that [s]he was a member of a protected class and that [s]he was paid less than a non-member for work requiring substantially the same responsibility."  *Fields v. Stephen F. Austin State Univ.*, 611 Fed. App'x 830, 831 (5th Cir. 2015) (citation omitted).  She also "must show that [her] circumstances are

4

'nearly identical' to those of a better-paid employee who is not a member of the protected class." *Id*.

To establish a prima facie case under the Equal Pay Act, a plaintiff must show that: "(1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than an employee of the opposite sex providing the basis of comparison." *Id.* at 832 (citation omitted).

UMMC contends that it did not discriminate in pay based on race against Zhan or any other employees of Asian descent. To support its contention, UMMC presented affidavit testimony from its employee relations director Smith-Watson. Docket No. 64-9. Smith-Watson testified that all employees holding the position of Scientist I are paid within the position's salary range regardless of race. She also testified that the highest paid white Scientist in that category was paid less than the highest paid Asian Scientist in that category.[4] *Id.* at 48. UMMC also presented evidence showing that all five Scientists in Zhan's department were of Asian descent and the two highest ranking Scientists were female. Docket No. 64-13.

Zhan did not present evidence to rebut UMMC's assertions. Rather, Zhan testified that she concedes her equal pay claims. Docket No. 64-5, at 26. Therefore, judgment in favor of UMMC is appropriate on these claims. *See Hankins v. Ford Motor Co.*, No. 3:08-CV-639-CWR-FKB, 2011 WL 6180410, at *4 (S.D. Miss. Dec. 13, 2011); *Hubbard v. Yazoo City*, No. 3:10-CV-308-CWR-LRA, 2011 WL 2692972, at *3 (S.D. Miss. July 11, 2011); *see also Sanders v. Sailormen, Inc.*, No. 3:10-CV-606, 2012 WL 663021, at *3 & n. 30 (S.D. Miss. Feb. 28, 2012) (failure to address a claim results in the abandonment thereof) (collecting cases), *aff'd*, No. 12-60224, 2013 WL 69354 (5th Cir. Jan. 7, 2013).

---

[4] It does not escape the Court's attention that the alleged reduction in force was implemented in only Dr. Didion's lab, but UMMC offers comparative wage evidence of the entire department in which Zhan worked.

### B. Race Discrimination Under Title VII

Title VII prohibits an employer from "discharg[ing] an individual, or otherwise discriminat[ing] against any individual . . . because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  The *McDonnell Douglas* burden-shifting framework applies to Title VII race discrimination claims.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 739 (1973).  To establish a prima facie case of race discrimination a plaintiff must show that she is a member of a protected class, was qualified for her position, was subject to an adverse employment action, and was replaced by someone outside the protected class.  *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

Once a plaintiff establishes her prima facie case, the burden shifts to the employer to produce a "legitimate, non-discriminatory reason" for the adverse employment action.  *Id*. (citation omitted). If the employer satisfies the burden of production, the plaintiff must then prove that the employer's reason is a pretext for discrimination or that the employer's reason is true but that race discrimination was a motivating factor for the adverse employment action.  *Id*.

#### 1. Zhan's Prima Facie Case

UMMC argues that Zhan cannot make out her prima facie case because she is unable to prove that a non-Asian employee replaced her.

The Fifth Circuit has "caution[ed] district courts against applying the four-part, prima facie case test too mechanically."  *Nations v. Jackson Public Schools*, No. 3:13-CV-690, 2015 WL 1807031, at *2 (S.D. Miss. April 21, 2015) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000)).  "So-called reduction in force cases like this one show how a mechanical application of the standard can be hazardous, as reduction-case plaintiffs are simply

laid off and thus are incapable of proving the fourth *McDonnell Douglas* prong." *Id*. (citation and quotation marks omitted).

UMMC asserts, "per the reduction in force proposal, the duties performed by the Plaintiff were to be absorbed by the Postdoc Fellow I position, which at the time was occupied by Jing Li, an Asian female." Docket No. 65, at 6. While that would ordinarily end the analysis, Zhan presented evidence that Didion knew weeks earlier that Li was about to resign.[5] UMMC contends, however, that "[s]ubsequent to the RIF, Li submitted her resignation to be effective September 27, 2013. Docket No. 66-40. UMMC argues that Li's resignation forced it to hire a white female because no Asians, including Zhan, applied for the new position. *Id*. at 7.[6]

Even if Zhan's duties had been absorbed by Li, it would not eliminate the inference of discrimination. *See Nieto v. L & H Packing Co.*, F.3d 621, 624 (5th Cir. 1997) (finding that replacement by member of the same class does not negate the possibility of discrimination).

Because there is evidence that Li, an Asian woman, resigned from UMMC, making her unable to absorb Zhan's duties; and as a result, a white female was hired to replace Zhan, the Court is satisfied that Zhan has met all four elements necessary to make out her prima facie case.

### 2. UMMC's Legitimate, Non-Discriminatory Reason

The burden of production now shifts to UMMC to provide a legitimate non-discriminatory reason for terminating Zhan's employment. UMMC contends that it terminated Zhan because Didion needed to reorganize his lab to allow him to delegate duties to a manager and give him more time to seek additional funding. UMMC also contends that the elimination of

---

[5] Zhan presented an email, dated August 15, 2013, from Jing Li to Smith-Watson in which Li informed Smith-Watson that she had spoken with Dr. Didion about resigning from her position as early as July 11, 2013, almost one month before Zhan's termination, and four days prior to Didion's first proposal to eliminate Zhan's position.
[6] In its brief, UMMC cites to *Dubaz v. Johnson Controls World Srvs.*, 163 F.3d 1357 (5th Cir. 1998), an unpublished Fifth Circuit case, to support its argument that "[s]ince no one was retained outside of Plaintiff's protected class and her job duties were absorbed by a member of her own protected class, Plaintiff must show that she applied for other positions in the institution to establish a *prima facie* case." Docket No. 65. This argument, however, is unpersuasive since Zhan's duties, as conceded by UMMC, were not absorbed by a member of her protected class.

Zhan's position and the creation of the management position would ensure greater productivity. Either reason is enough to satisfy UMMC's burden of production. *See EEOC v. Tex. Instruments, Inc.,* 100 F.3d 1173, 1181 (5th Cir. 1996) ("[A] reduction in force is itself a legitimate, nondiscriminatory reason for discharge.").

### 3. Zhan's Evidence of Pretext

"A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010) (citation omitted). "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (citation omitted). "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." *E.E.O.C. v. Louisiana Office of Cmty. Servs.*, 47 F.3d 1438, 1443-45 (5th Cir. 1995), *overruled on other grounds by Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000).

Reductions in force usually involve an employer's decision to eliminate positions and as a result layoff multiple employees. *Bellaver v. Ouanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000). "The inference of discrimination arises in single-discharge cases, sometimes called mini-RIFs, where the terminated employee's duties are absorbed by other employees not in the protected class." *Id*. at 494 (citation and quotation marks omitted). Employers cannot avoid liability by classifying a decision to terminate a single employee as a reduction in force. *Id*.

Zhan offers two reasons as proof that UMMC's "reduction in force of one" was pretextual. First, she testified that on August 8, 2013, one day before she was terminated,

Wilbert ordered all of her non-Asian co-workers to write disparaging letters concerning Zhan's professionalism and lack of teamwork. Docket No. 64-5 at 15. For example, Zhan's co-worker Jessica Faulkner wrote in her letter that "[Zhan] refuses to provide assistance to anyone . . . [and] she has refused to help me with procedures and troubleshooting." Docket No. 66-24. Faulkner also wrote that "[Zhan] does not appear to understand basic scientific concepts." *Id*. Under oath, however, Faulkner told a different story. She testified during her deposition that Zhan taught her and other co-workers how to perform various techniques and provided assistance and troubleshooting whenever asked. Docket No. 66-22.

Moreover, the day that Wilbert collected the letters is the same day that Didion presented "his reduction in force" proposal to Smith-Watson, who also approved it on the same day. Zhan contends, had the reduction in force been genuine, these letters would not have been necessary. Wilbert offered no explanation for the suspicious timing of the collection of the letters.[7] When questioned at his deposition on the issue, Wilbert testified that he collected the letters "just for records." Docket No. 66-44. The inference from the letter collection is that UMMC's reduction in force was a sham. Based on this inference, Zhan may credibly argue that UMMC wanted to get rid of her and was establishing a reason. This suggests that that UMMC's legitimate non-discriminatory reason is undeserving of credence.

Second, Zhan contends that Wilbert's refusal to collect letters from her Asian co-workers proves that the reduction in force was motivated by discriminatory animus. Docket No. 64-5, at 15. To this, UMMC does not respond. But, UMMC will certainly have to explain to a jury why Didion and the administrator over Zhan's department would solicit or order disparaging letters

---

[7] *Compare Gillaspy*, 278 Fed. App'x at 314 (finding that plaintiff created a fact issue on whether employer's proffered reason of test scores was pretextual when human resources director made hiring decisions two months before receiving the applicants' scores), *with Daniel v. Universal ENSCO, Inc.*, 507 Fed. App'x 434, 439 (5th Cir. 2013) (finding that plaintiff did not show pretext when his unfavorable evaluation was conducted prior to employer's meeting to discuss reduction in force).

about Zhan only from employees who Zhan claims hurled racist comments on the job. Moreover, specifically not allowing her Asian co-workers to comment on Zhan's capabilities and teamwork (or lack thereof) reeks of animus, and a jury may find it repugnant.

"Determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder." *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 125 (5th Cir. 1992) (citation omitted). Here, there is a fact issue as to whether UMMC's only explanation for terminating Zhan, a one-person reduction in force, is pretext for discrimination based on Zhan's race. Thus, the issue must be resolved at trial.

## IV. Conclusion

Based on the aforementioned, the defendant's motion is granted in part and denied in part. The defendant's motion to strike is granted, and plaintiff's motion to submit additional evidence is denied. Within seven days of the entry of this Order, the parties are directed to contact the Court to arrange a mutually convenient time to hold a telephonic status conference, so that the pretrial conference and associated deadlines, including a date for trial can be scheduled.

**SO ORDERED**, this the 26th day of September, 2016.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE